**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MIREILLE KOTOKLO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:20-cv-00635 |
| | ) | |
| v. | ) | Honorable Joan B. Gottschall |
| | ) | |
| ROBERT KARPINSKI AND DEPAUL | ) | Magistrate Judge M. David Weisman |
| UNIVERSITY, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants DePaul University ("DePaul") and Robert Karpinski ("Karpinski") (collectively, "Defendants") by and through their undersigned counsel, present their opposition to Plaintiff Mireille Kotoklo's ("Plaintiff") Motion for Partial Summary Judgment ("Plaintiff's Motion"). Defendants incorporate, as if fully set forth here, their Local Rule 56.1(b)(3)(C) Statement of Uncontested Additional Material Facts ("Facts"), filed contemporaneously with this Opposition.

## INTRODUCTION

Plaintiff's Motion seeks an affirmative ruling on her retaliation claims brought pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Illinois Human Rights Act ("IHRA"), and 42 U.S. § 1981 ("Section 1981"). She also seeks recovery for alleged retaliatory discharge in violation of the Illinois Whistleblower Act, 740 ILCS 174/20 ("IWA"). As set forth below, given the evidence in this matter, it is obvious Plaintiff filed an affirmative motion not because she actually believes she is entitled to judgment as a matter of law on some of her claims, but rather as a strategic move – in an effort to convince the Court that a fact question exists and Plaintiff's claims should go to trial. The Court should not be fooled.

The attached Facts detail the six and one-half months Defendants spent coaching and counseling Plaintiff on professional management practices, with the intention of improving morale and operations in her department. Despite this, Plaintiff refused to admit any performance deficiencies or accept responsibility, and she denied the legitimacy of her staff's concerns. She later engaged in a dishonest and disingenuous attempt to re-hire Dilnesa Eshete ("Eshete"), knowing this former DePaul employee had a past marred by excessive absences and unreliability. When tested by the required standards of proof for her claims, Plaintiff's Motion fails as a matter of law – in fact, Defendants are entitled to summary judgment as set forth in their motion (ECF No. 60), and Plaintiff's claims should be dismissed, with prejudice.

ARGUMENT

## I. APPLICABLE LEGAL STANDARD.

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Though motions for summary judgment typically are brought by defendants, Plaintiff's burden here is no less stringent. She must demonstrate that each element of her claims has been proven by evidence. Without it, she is not entitled to judgment as a matter of law.

Plaintiff's Title VII, IHRA, and Section 1981 claims are analyzed under the same framework. *Humphries v. CBOCS West, Inc*., 474 F.3d 387, 403-04 (7th Cir. 2007) (noting that Section 1981 retaliation claims are analyzed under the same legal framework as Title VII retaliation); *Zaderaka v. Ill. Human Rights Comm'n*, 131 Ill.2d 172, 178-79 (1989) (noting courts use the same analytical framework to analyze Title VII and IHRA claims).

## II.        PLAINTIFF IS NOT ENTITLED TO AFFIRMATIVE SUMMARY JUDGMENT.

### A.        Plaintiff Cannot Satisfy the Required Elements of Her Retaliation Claims.

Examining each of Plaintiff's unsupported assertions, there is not enough evidence to prove, as a matter of law, that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two. *King v. Ford Motor Co*., 872 F.3d 833, 841 (7th Cir. 2017). Though the courts of this jurisdiction no longer distinguish between direct and indirect evidence, the familiar *McDonnell Douglas* burden-shifting framework may still be employed to analyze retaliation claims. *Levy v. Wilkie*, Case No. 20-1877, 2021 WL 56708, *4 (7th Cir. Jan. 07, 2021), citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A plaintiff's *prima facie* case is established if she can show: "(1) she engaged in a statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite her satisfactory job performance, the employer took an adverse action against her; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Bischoff v. Thornton Township*, Case No. 19 cv 04094, 2021 WL 1172263, *13 (N.D. Ill. March 27, 2021), citing *Rozumalski v. W.F. Baird & Assocs*., 937 F.3d 919, 926 (7th Cir. 2019).

Here, Plaintiff's retaliation claims fail because crucial elements are completely absent. She did not engage in a statutorily protected activity. She was not meeting Defendants' legitimate expectations. She offers not a single comparator who was treated more favorably. She offers no evidence of but-for causation. Without those fundamental elements, Plaintiff cannot demonstrate, as a matter of law, that she suffered unlawful retaliation.

### 1.        Plaintiff Did Not Engage in Protected Activity.

"It is axiomatic that a plaintiff engage in statutorily protected activity before an employer

can retaliate against her for engaging in statutorily protected activity." *Durkin v. City of Chicago*, 341 F.3d 606, 614-15 (7th Cir. 2003) (holding an employer cannot retaliate if there has been no protected expression because there is nothing against which to retaliate). Here, Plaintiff cannot prove the existence of protected activity. Her advocacy of Eshete and belief that he constituted the best candidate for the job falls short of the required standard. The following cases are instructive.

In *Austin v. Federal Reserve Bank of Chicago*, No. 13 C 5990 (N.D. Ill. Jan. 7, 2015), the plaintiff, a former assistant examiner, sued the bank for retaliation after voicing concerns regarding its charitable activities and employee travel policies. In support of his case, the plaintiff cited a conversation with his supervisor during which they discussed his overtime pay and his concern that they "weren't getting along." *Id.*, *2. He later admitted that he never complained that his supervisor's actions were racially motivated or that he was treated differently because he is male. Granting summary judgment to the employer, the court held the plaintiff's actions did not constitute protected activity as a matter of law. *Id.* (citing *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) ("Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient [to establish that plaintiff engaged in a protected activity under Title VII]"). The court also quoted *Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 658 (7th Cir. 2012), concluding, in an age discrimination case, that "general complaints" to supervisors do not constitute protected activity because the employee did not complain about discrimination based on a protected characteristic.

Here, Plaintiff never complained that Karpinski's concerns about Eshete were motivated by racial or national origin animus. (Facts ¶ 38.) Only now, in pursuit of litigation, does Plaintiff claim her support of Eshete was motivated by concerns of discrimination. In reality, her actions

constituted mere advocacy.

*Hamilton v. New Horizons Home Healthcare, LLC*, Case No. 16 cv 399 TLS, 2018 WL 3633951 (N.D. Ind. July 31, 2018) presented a similar circumstance. There, the plaintiff's colleague took pregnancy-related leave. While she was away, the employer uncovered a scheme between the two employees to defraud the company of wages for work never performed. The employer terminated the colleague and reprimanded the plaintiff for her role in the scheme. At the colleague's unemployment hearing, the plaintiff was asked whether the work arrangement had been approved by management and she answered affirmatively, contradicting the employer's assertion of ignorance. *Id*. at *2. The company subsequently fired her, and she later commenced a lawsuit for unlawful retaliation.

Granting summary judgment to the employer, the court noted that the plaintiff never stated, or even implied, during the unemployment proceedings that her former colleague had been terminated unlawfully. *Id*., *5. Citing *Garcia-Paz v. Swift Textiles, Inc*. 873 F. Supp. 547, 559 (D. Kan. 1995), the court wrote, "[p]lainly absent from this [ADEA] language is any protection for persons who simply champion the cause of an older worker, even if the advocate acts out of an unarticulated belief that the employer is discriminating on the basis of age." *Id*. The court continued, "[l]iability will not attach unless the activity in question advances beyond advocacy and into recognizable opposition to an employment practice that the claimant reasonably believes to be unlawful." *Id*.

Like the plaintiff in *Hamilton*, Plaintiff merely advocated for Eshete, her preferred candidate. If she harbored a belief at that time that Eshete was treated unlawfully, she never articulated that belief to Defendants. (Facts ¶ 38.) Moreover, it is undisputed that Karpinski never asked her to remove Eshete from the search process. (Facts ¶¶ 18-36.) With no evidence that

Plaintiff raised concerns of race or national origin discrimination, and no evidence that she refused an unlawful directive from Karpinski, she cannot demonstrate protected activity.

2.    <u>Plaintiff Did Not Meet Defendants' Legitimate Job Expectations.</u>

The second element absent from Plaintiff's case is any evidence that she performed in a satisfactory manner. Plaintiff may disagree with Defendants' assessment of her performance as head of Access Services, but her personal opinion and disagreement do no render Defendants' rationale illegitimate.

An employee's self-serving statements about her ability are insufficient to contradict an employer's negative assessment of that ability. *Gustovich v. AT&T Commc'ns, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992). Self-serving statements do not "shed any light on whether the employer honestly believed its employment decision on performance-related considerations, which is the focus of our inquiry in these cases." *Dey v. Colt Constr. & Dev. Co.,* 28 F.3d, 1446, 1460 (7th Cir. 1994); *Gustovich*, 972 F.2d at 848.

Here, Karpinski began his assessment of the library's operations in December 2018. Between January and March 2019, he met with Access Services staff members who raised a single point of concern: Plaintiff. (Facts ¶¶ 4-5.) They described the department as an "island," and told Karpinski Plaintiff failed to promote collaboration between departments, became angry when others took initiative, prohibited staff from talking to each other, and brow-beat them. (Facts ¶ 5.) They described the work environment as hostile and told Karpinski they felt fearful. (*Id.*)

After hearing complaints from several different staff members, Karpinski met with Plaintiff, explained her performance deficiencies, and told her exactly what to do to improve. (Facts ¶¶ 6-9.) He provided a written list of expectations, including improved collaboration within her department and across departments, and better communication with her staff. (Facts ¶ 7.)

Defendants also enlisted Sarah Frost ("Frost"), DePaul's Director of Workplace Learning and Performance, to facilitate. (Facts ¶¶ 9-11.)

Despite Defendants' attempts to assist and support Plaintiff, she made little effort and, instead, sent Karpinski a defiant email on June 20, 2019, refuting the staff concerns Karpinski previously provided. (Facts ¶ 12.) Rather than engage in constructive reflection as Defendants reasonably expected, Plaintiff accused Karpinski of trying to intimidate, silence, and marginalize her. (Facts ¶ 13.) Conspicuously absent from that email is any allegation that race or national origin motivated Defendants' actions. (Facts ¶¶ 12-13.)

On August 23, 2019, Plaintiff met with Karpinski, Interim Assistant University Librarian, Ashley McMullin ("McMullin"), and Frost to discuss feedback from a previous team-building meeting and Plaintiff's goals in response. (Facts ¶ 14.) Plaintiff arrived with a blank legal pad, unprepared to discuss her goals. (Facts ¶¶ 14-17.) Disappointed by her obvious unwillingness to engage in meaningful discussion, Karpinski instructed Plaintiff to prepare goals to share with McMullin on September 4, 2019, but she failed to comply. (Facts ¶¶ 16-17.)

Plaintiff's leadership of the committee formed to recommend a candidate to fill the Night Circulation Supervisor vacancy provided further bases for Karpinski's termination decision. On September 4, the former Night Circulation Supervisor, Miriam Usmani, contacted Karpinski and told him Eshete would be a "terrible choice for [her] job" because "[h]is attendance problems and the preferential treatment that he was afforded were two of the greatest contributions to the demise of the work morale in the Access Services department." (Facts ¶ 23.) The next day, Karpinski instructed Plaintiff not to interview anyone on September 6. (Facts ¶ 24.) He asked her to schedule interviews for the top three candidates, despite her plan to interview only Eshete, and he scheduled a meeting with Plaintiff and McMullin to discuss his concerns regarding Eshete. (Facts ¶ 24.)

On September 6, Karpinski and McMullin met with Plaintiff and explained Access Services staff had advised that Eshete was often late, unreliable, and received preferential treatment from Plaintiff during his employment at DePaul. (Facts ¶¶ 25-26.) They told Plaintiff hiring Eshete could erase the progress she had made on improving morale in her department. (*Id.*)

On September 17, 2019, after Plaintiff advised Karpinski that the committee selected Eshete, he learned she had never disclosed to the other two committee members, Travis Eastham and Firouzeh Rismiller, information he provided to her regarding staff members' concerns. (Facts ¶¶ 32-33.) Though they were aware of Eshete's prior attendance problems, neither knew Eshete received disciplinary action or his former colleagues had complained about his reliability and performance. (Facts ¶¶ 30-33.)

To better understand the history of the candidate Plaintiff so clearly preferred, Karpinski reviewed Eshete's DePaul personnel records and uncovered that he took 36 sick days in 2017, 31 sick days between January 1 and June 31, 2018, 22 unrecorded sick days in 2017, and 14 unrecorded sick days for the first six months of 2018. (Facts ¶ 27.) Finally, during a meeting requested by Plaintiff's staff members, Karpinski heard their reports of Eshete's unreliability, his frequent attendance problems, his practice of leaving work to drive Uber fares, and their perception that Plaintiff was uninterested in correcting the situation. (Facts ¶ 34.) Karpinski concluded the committee's recommendation of Eshete should not be accepted. (Facts ¶ 35.) He re-commenced the committee so the search process could proceed, untainted by Plaintiff's dishonesty and inappropriate advocacy for a profoundly flawed candidate. (Facts ¶ 35.) Ultimately, Karpinski accepted the committee's recommendation to hire a Black candidate on or about November 18, 2019. (Facts ¶ 35.) On September 17, 2019, Karpinski decided to terminate Plaintiff's employment due to poor performance as well as her dishonesty, and he contacted the Human Resources

Department for guidance. (Facts ¶ 36.)

In sum, there is ample evidence of Plaintiff's poor performance. Shortly after assuming oversight of the library's operations, Karpinski received complaints from staff members regarding her leadership. Rather than remove Plaintiff immediately, Karpinski undertook a comprehensive effort to support her, engaging DePaul's Human Resources Department to coach and assist. Plaintiff did not meaningfully participate in that process. Rather than accept responsibility, she accused Karpinski of trying to silence and marginalize her. Her service on the search committee was yet another example of failed leadership. Karpinski correctly observed that she withheld significant information from the committee and, instead, promoted her own preferred candidate. In the face of these undisputed facts, Plaintiff offers no evidence that she performed satisfactorily. In fact, the evidence indisputably supports the exact opposite conclusion. Meeting an employer's legitimate expectations is a required element of a *prima facie* retaliation case. *See Boston v. U.S. Steel*, 816 F.3d 455, 464 (7th Cir. 2016). Plaintiff's attempt at summary judgment fails.

3.  Plaintiff Identifies No Comparators.

The existence of a similarly-situated individual who received more favorable treatment is another element missing from Plaintiff's case. "In order to be a proper comparator, a fellow employee need not be identical to a retaliation plaintiff in all respects, but he must be similar in all material respects." *Bio v. Fed. Express*, 424 F.3d 593, 597 (7th Cir. 2005). "The important question is therefore whether others similarly situated to the plaintiff[s] with respect to important matters characterizing the employment relationship, had been treated one way, and the plaintiff[s], having engaged in statutorily protected activity, [were] treated differently." *South v. Ill. EPA*, 495 F.3d 747, 752 (7th Cir. 2007).

Here, Plaintiff has not identified (and cannot identify) a single non-Black, non-African-

born comparator. The absence of that crucial element is fatal to her claim and defeats her Motion.

### 4. Plaintiff Cannot Prove Causation.

The absence of causation provides further basis for the denial of Plaintiff's Motion. Even if she could prove she engaged in protected activity (which she has not), she cannot show that any such activity was the "but-for" cause of her termination. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013).

Plaintiff's first mention of "race" or "African" to Karpinski was in her September 19, 2019 email, in which she addressed their discussion during the September 17 meeting and attempted to defend her leadership of Access Services and her work as Chair of the committee. (Facts ¶¶ 37-38.) Even if those comments constituted protected activity (which they do not), they were made two days *after* Karpinski's termination decision on September 17, 2019. (Facts ¶ 36.) The undisputed timeline makes it impossible for him to have retaliated against Plaintiff for complaining of alleged unlawful bias against Eshete.

Plaintiff clearly disagrees with the reasons why she was terminated, but self-serving speculation cannot establish causation. An employer is not liable for retaliation if it presents "unrebutted evidence that it would have taken the adverse employment action against the plaintiff anyway, in which event the defendant's retaliatory motive, even if unchallenged, was not a but-for cause of the plaintiff's harm." *Egan v. Freedom Bank*, 659 F.3d 639, 642 (7th Cir. 2011). Here, there is no evidence of any protected activity by Plaintiff that triggered Karpinski to terminate her. Once again, her case falls short.

### B. Plaintiff Has Not Proven Pretext.

Even if Plaintiff could satisfy each of the *prima facie* elements, she cannot demonstrate, as a matter of law, that her termination was pretext for unlawful retaliation. To establish pretext, she

must identify evidence that Defendants' non-discriminatory reasons for her termination: (1) were dishonest; and (2) the true reason was based on a discriminatory intent. *Garofalo v. Village of Hazel Crest*, 754 F.3d 428, 439 (7th Cir. 2014). It is not sufficient to prove that reason was doubtful or mistaken. *Crim v. Bd. of Educ. of Cairo Sch. Dist. No. 1*, 147 F.3d 535, 541 (7th Cir. 1998); *Daugherty v. Wabash Ctr.*, 577 F.3d 747, 752 (7th Cir. 2009) ("An employer's explanation can be 'foolish or trivial or even baseless' so long as it 'honestly believed' the proffered reasons for the adverse employment action."). It does not mean a mistake, but instead an actual lie, "specifically a phony reason for some action." *Id.*

Plaintiff scatters unsupported assertions throughout her Motion in a weak effort to prove pretext (further demonstrating her summary judgment motion is just an elaborate ruse to avoid dismissal of her claims). Without actual evidence, these assertions distract from the proper analysis.

1.  Karpinski Did Not Admit that He Terminated Plaintiff for Refusing to Remove Eshete From Contention.

No such admission exists anywhere in the record. Plaintiff repeats this false claim throughout her Motion but cannot point to any supporting testimony or documentation. To be clear, there is *no evidence* that Karpinski directed Plaintiff to *remove* Eshete from contention. Further, though Plaintiff argues at page 6 of her brief that Karpinski decided to fire her, "[i]mmediately after the search committee affirmed its recommendation that DePaul hire a [B]lack immigrant," she provides zero evidence connecting Eshete's status as a Black immigrant to Karpinski's decision to pursue *Plaintiff's* termination. By contrast, Defendants have filled that evidentiary void with undisputed evidence of Karpinski's disappointment in Plaintiff's leadership and honesty.

Plaintiff may argue that Karpinski's concerns with Eshete were based on unlawful bias, but simply asserting the argument does not make it true. *Linda Constr. v. City of Chicago*, Case No. 15 c 8714, 2016 WL 4429893, at *5 (N.D. Ill. Aug. 22, 2016) ("[S]aying so does not make it

so. Plaintiffs must connect the dots between the alleged cause (their race) and the alleged effect (the discriminatory conduct)"). Plaintiff has failed to connect those dots and cannot support her wholly conclusory claim that Karpinski was motivated by unlawful bias.

2.     <u>Plaintiff Creates a False Equivalency Between Karpinski and Herself.</u>

Plaintiff erroneously argues Karpinski's criticism of her dishonesty is invalid, and therefore pretextual, because he failed to inform DePaul's Human Resources Department that he decided to terminate Plaintiff hours after he learned the committee recommended Eshete. She further curiously alleges Karpinski's selection of McMullin for the interim AUL position invalidates his concerns regarding Plaintiff's leadership of the Night Circulation Supervisor search committee. Plaintiff's arguments on both points are misplaced.

Plaintiff was Chair of the committee and head of the Access Services Department. (Facts ¶¶ 1, 18.) Karpinski reasonably expected her to inform her committee of all pertinent information that might impact its deliberations. (Facts ¶¶ 25-27; 31-33.) She fell far short. Any attempt to compare her own failure to disclose salient information about a candidate with the timing of Karpinski's notification of his termination decision is a red herring. One event has nothing to do with the other. There is no evidence Karpinski withheld information from the Human Resources Department, as Plaintiff did from the committee. (Facts ¶¶ 25-27; 31-33.)

Plaintiff also alleges Karpinski's selection of McMullin for the interim AUL position makes hypocritical his requirement that the search committee interview more than a single candidate. She completely ignores the fact that Karpinski interviewed *both* candidates who applied for the position. (Facts ¶ 39.) Plaintiff offers no evidence that Karpinski violated any policy requirements in filling the position. (Facts ¶ 39.) His instruction to interview candidates other than Eshete, therefore, cannot be comparable to his own consideration of McMullin for the interim post.

12

Plaintiff improperly argues that, if Karpinski handled his selection of McMullin differently, his motivation for terminating Plaintiff must necessarily be pretextual. Her comparison of the two different processes is pure argument and falls far short of her summary judgment burden.

       3.    <u>Karpinski Reasonably Expected Plaintiff to Give the Search Committee Complete Information Regarding Eshete</u>.

Karpinski reasonably expected Plaintiff to fully inform her committee of all relevant information. He expected her to disclose Eshete's past job performance, his attendance issues, and the fact that his former colleagues worried his return would impact department morale. (Facts ¶¶ 31-35.) After meeting with the committee on September 17, 2019, Karpinski learned she had not done so. (Facts ¶¶ 32-33.) Plaintiff now argues Karpinski's disapproval of her leadership failures is implausible because he could have conveyed the information to the committee himself. Again, Plaintiff's attempt to shift the blame is another red herring and not evidence of pretext. There is nothing suspicious about Karpinski's expectation that Plaintiff do her job, and do it honestly. He could have communicated the information directly to the committee, but his expectation that Plaintiff do so, as Chair and as Eshete's former supervisor, is not only plausible; it is appropriate. Plaintiff's opinion to the contrary is of no consequence. *Gordon v. United Airlines, Inc*., 246 F.3d 878, 889 (7th Cir. 2001) ("[W]e do not sit as a super-personnel department that will second guess an employer's business decision.")

       4.    <u>Application of DePaul's Progressive Discipline Policy is Not Mandatory</u>.

Plaintiff argues Defendants' failure to apply progressive discipline prior to her termination is evidence of pretext. She is wrong. Undisputed testimony from Isabel Diaz ("Diaz"), DePaul's Director of Employee Relations and Equal Employment Opportunity, confirms the University does not require application of progressive discipline prior to termination. (Facts ¶ 40.) In fact, Diaz identified at least two other DePaul employees who were terminated without progressive discipline.

Neither of those individuals is Black and neither is of African origin. (Facts ¶ 40.)

Even if Plaintiff accurately represented DePaul's policy, she failed to identify a comparator employee who received progressive discipline. Without this evidence, her argument cannot serve as proof of pretext.

### C.    Plaintiff's Whistleblower Claim Fails as a Matter of Law.

Plaintiff's request for judgment on Defendants' alleged violation of the IWA is as bereft of evidence as her federal claims. Section 20 of the IWA prohibits retaliation:

> When an employee refuses to participate in an activity that would result in a violation of a state or federal law, rule, or regulation, including but not limited to, violations of the Freedom of Information Act.

740 ILCS 174/20.

To prevail, Plaintiff must prove: (1) that she refused to participate in an activity that would result in a violation of a state or federal law, rule, or regulation; and (2) her employer retaliated against her because of the refusal. *Corah v. The Bruss Co.*, 2017 Ill. App (1st) 161030. ¶15 (2017). As the foregoing discussion demonstrates, Plaintiff never *refused* to do anything unlawful. She argues throughout her Motion that she refused to remove Eshete from contention as a candidate for the Night Circulation Supervisor position but cites no statement or written directive from Karpinski or any other witness to support that claim. Without an actual refusal by Plaintiff to participate in unlawful activity, she cannot prove that her termination violated the IWA.

Further, there can be no claim under the IWA if the activity at issue is not actually unlawful. *Day v. Inland SBA Mgmt. Corp.*, Case No. 11 cv 6201, 2013 WL 5290047, at *6 (N.D. Ill. Sept. 18, 2013). As noted above, Plaintiff cannot create fact from a mere allegation. She must produce actual evidence that Karpinski's actions constituted unlawful discrimination. None exists, and consequently, none has been offered in support of Plaintiff's Motion.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants DEPAUL UNIVERSITY and ROBERT KARPINSKI respectfully request that the Court enter an order denying Plaintiff's Motion for Partial Summary Judgment.

DATED:   April 23, 2021                          Respectfully submitted,


                                         By:   /s/ Katherine A. Manuel
                                               One of the Attorneys for Defendants
                                               DEPAUL UNIVERSITY and ROBERT
                                               KARPINSKI

Katherine A. Manuel (ARDC No. 6315551)
Jennifer H. Kay (ARDC No. 6226867)
**OGLETREE, DEAKINS, NASH,**
   **SMOAK & STEWART, P.C.**
155 N. Wacker Drive, Suite 4300
Chicago, Illinois 60606
Telephone:  312.558.1220
Facsimile:   312.807.3619
*katherine.manuel@ogletree.com*
*jennifer.kay@ogletree.com*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on April 23, 2021, she filed the foregoing ***Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment*** electronically with the Clerk of Court using the ECF system, which sent notification of such filing to:

> Fitzgerald T. Bramwell, Esq.
> **LAW OFFICES OF FITZGERALD BRAMWELL**
> 225 West Washington, Suite 2200
> Chicago, Illinois 60606
> *bramwell@fitzgeraldbramwell.com*
>
> *Attorney for Plaintiff*

> /s/ Katherine A. Manuel
> One of the Attorneys for Defendants
> DEPAUL UNIVERSITY and ROBERT KARPINSKI

46884998.1